```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
```
JUAN VALDEZ #1-10, individually
and on behalf of those similarly
situated; and the WORKPLACE
PROJECT, INC.,

               Plaintiffs,        MEMORANDUM AND ORDER
                                     05-CV-4323 (JS)(ARL)

    -against-

TOWN OF BROOKHAVEN; JOHN JAY
LAVALLE, Individually and as the
Supervisor of the Town of
Brookhaven; COUNTY OF SUFFOLK;
STEVE LEVY, Individually and as
the County Executive of the
County of Suffolk,

               Defendants.
```
----------------------------------X
```
Appearances:
For Plaintiffs:       Foster S. Maer, Esq.
                      Sandra Del Valle, Esq.
                      Puerto Rican Legal Defense & Education Fund
                      99 Hudson Street, 14th Floor
                      New York, NY 10013

For Defendants:

Town of Brookhaven  Jeltje DeJong, Esq.
John Jay LaValle    Devitt Spellman Barrett
                      50 Route 111
                      Smithtown, NY 11787

County of Suffolk   Brian P. Callahan, Esq.
Steve Levy          Luz Adriana Lopez, Esq.
                      Suffolk County Attorneys Office
                      100 Veterans Memorial Hwy.
                      Hauppauge, NY 11788-4311

SEYBERT, District Judge:

        Pending before the Court are Town of Brookhaven (the "Town") and John Jay LaValle's ("LaValle"), motion, pursuant to Local Rule 6.3, for reconsideration of the Court's December 2005

Order.[1] Also pending before the Court are motions to dismiss the Amended Complaint by all Defendants. For the reasons explained herein, the Town and LaValle's motion for reconsideration is DENIED. The Town and LaValle's motion to dismiss is GRANTED in part, and Suffolk County (the "County") and Steve Levy's ("Levy") motion to dismiss the Complaint is GRANTED.

BACKGROUND

The Court presumes the Parties' familiarity with the facts and background of this case. Should the Parties require a primer, it may be found in the Court's Order dated December 15, 2005 ("December Order").

On September 13, 2005, Plaintiffs commenced the instant putative class action alleging that the Town's "no notice, no standards" evictions violated their rights to Due Process and Equal Protection, and their rights guaranteed by the Fair Housing Act of 1968, as amended by the Fair Housing Act Amendments Act of 1988 (collectively, the "FHAA"). See 42 U.S.C. § 3601, et seq. Plaintiffs moved for a preliminary injunction, preventing the Town from conducting any further "no notice, no standards" evictions.

In the December Order, the Court rejected Plaintiffs' Due Process claims, but found that Plaintiffs had demonstrated a

---

[1] Plaintiff's have filed a cross-motion for reconsideration. However, any such motion is untimely. The County requested, and received an extension of time to file the instant motion. Plaintiffs obtained no such extension.

likelihood of success on the merits with respect to their FHAA claims. In turn, the Court enjoined the Town from obtaining further <u>ex</u> <u>parte</u> Temporary Restraining Orders ("TROs") in a manner inconsistent with State and Town law. On January 6, 2006, the Town moved for reconsideration of the December Order.

<u>DISCUSSION</u>

The Town's first three arguments challenge the Court's findings with respect to Plaintiffs' FHAA claim. First, the Town argues that Plaintiffs failed to establish a comparative class in support of their disparate impact claim. Second, the Town maintains that an FHAA violation cannot arise where, as here, a municipality is enforcing a legitimate code provision that does not preclude individuals from obtaining lawful housing. Finally, the Town argues that it has set forth legitimate nondiscriminatory reasons for its actions. The Town's remaining argument concerns the Court's application of <u>Rooker-Feldman</u>, and refusal to abstain from deciding this case. The Court will first address the Town's reconsideration motion, and then address the pending motions to dismiss.

<u>RECONSIDERATION</u>

I. <u>Standard Of Review</u>

The standards controlling a motion for reconsideration are set forth in Local Civil Rule 6.3 and Rule 59(e) of the Federal Rules of Civil Procedure. A motion for reconsideration is

appropriate when the moving party believes the Court overlooked important "matters or controlling decisions" that would have influenced the prior decision. Shamis v. Ambassador Factors Corp., 187 F.R.D. 148, 151, (S.D.N.Y. 1999). Reconsideration is not a proper tool to repackage and relitigate arguments and issues already considered by the Court in deciding the original motion. See United States v. Gross, No. 98-CR-0159, 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002) ("A party may not use a motion to reconsider as an opportunity to reargue the same points raised previously."). Nor is it proper to raise new arguments and issues. See Lehmuller v. Inc. Vill. of Sag Harbor, 982 F. Supp. 132, 135 (E.D.N.Y. 1997). Reconsideration may only be granted when the Court did not evaluate decisions or data that might reasonably be expected to alter the conclusion reached by the court. Wechsler v. Hunt Health Sys., 186 F. Supp. 2d 402, 410 (S.D.N.Y. 2002).

II. Disparate Impact

In the December Order, the Court found that the Town's "stepped up quality of life" code enforcement resulted in discriminatory impact on Latinos. The Town asserts that this conclusion overlooked a fundamental prerequisite for an FHAA discriminatory impact claim: a comparison group of similarly situated individuals unaffected by the Town's policy.

At the outset, the Court points out that this objection – like the Town's other arguments concerning the sufficiency of the

FHAA claims – was never previously raised. During the preliminary injunction hearing ("Hearing") and thereafter, the Town's sole argument in opposition to Plaintiffs' FHAA claim was based upon Section 3607(b)(1) of the FHAA. See December Order at 30 ("The Town proffers only one objection to Plaintiffs' claim . . . the FHAA has no proper application to a municipality's administration of zoning provisions concerning overcrowding."). Generally, such new arguments and issues cannot be raised on reconsideration. See Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998) (stating that motions for reconsideration are not "vehicles for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' . . . ."). However, because the award of injunctive relief required a determination that Plaintiffs established a likelihood of success with respect to their FHAA claim, the Court addresses the Town's arguments.

Contrary to the Town's assertions, the Court was fully aware of the requirement of a class of "similarly situated individuals." The Town simply disagrees with the comparative group relied upon by Plaintiffs in this action. The proper comparative group in this action is all residents in the Town of Brookhaven subjected to the Town's "stepped-up quality of life enforcement procedures." During the Hearing, the Court received evidence indicating that numerous locations had been cited or were under

5

investigation for violations of the Town's housing code. However, the "stepped-up quality of life enforcement procedures" resulted in 10 TROs only issued to locations where Latinos resided.

The comparison group of similarly situated persons need only identify those that are affected by the neutral policy, and those similarly situated who are unaffected. See Tsombanidis v. West Haven Fire Dep't, 35 F.3d 565, 576-77 (2d Cir. 2003). The comparison group cannot be so narrowly drawn so as to exclude those individuals who are affected by the neutral policy. See id. The Town suggests that Plaintiffs are required to point to specific Town residents cited for the exact same violations. The standard is not so demanding. It is enough that Plaintiffs cite to other locations with violations that were not subject to TROs. The Town may not rely upon the unclear standards of its ostensibly neutral policy as a shield to Plaintiffs' claim.[2] Overcrowding and violations of the maximum occupancy ordinance were not the only violations cited in the TROs. Other violations included exposed plumbing and electrical wiring, blocked ingress/egress and windows,

---

[2] The Court adds that, even if the discriminatory impact claims are lacking, there was ample evidence indicating that the enforcement of the ex parte TROs against Latinos was intentionally discriminatory. See December Order at 37-38. ("many of the facts supporting Plaintiffs' disparate impact claim are probative of discriminatory intent in this case. Most notably, the enforcement procedures: (1) have had a 100% impact on Latinos; and (2) constitute a marked departure from the procedures adhered to in prior zoning enforcement actions brought by the Town.")

6

lack of smoke and carbon monoxide detectors, and litter. These conditions might have been corrected if the Town provided occupants with notice, rather than obtaining TROs. However, they were not afforded this opportunity.

III. <u>Ability To Reside In Farmingville</u>

The Town asserts that Plaintiffs' FHAA claims must fail because the enforcement of the code provisions does not preclude the Plaintiffs from obtaining lawful housing in the Town of Brookhaven. In support of their argument, the Town inappropriately relies on a series of cases where plaintiffs challenged statutes and ordinances, which frustrated their rights to acquire housing. <u>See</u> <u>Reg'l Econ. Cmty. Action Program v. Middletown</u>, 294 F.3d 35, 47-48 (2d Cir. 2002); <u>Advocacy & Res. Ctr. v. Town of Chazy</u>, 62 F. Supp. 2d 686, 689 (N.D.N.Y. 1999); <u>Oxford House, Inc. v. Town of Babylon</u>, 819 F. Supp. 1179, 1183 (E.D.N.Y. 1993).

The Court agrees that the FHAA "does not grant protected classes carte blanche in determining where they can live in total disregard of the local zoning codes." <u>Advocacy</u>, 62 F. Supp. 2d at 689. This case, however, is not about the validity or sufficiency of the Town's Housing Code. Plaintiffs are challenging the Town's code enforcement scheme, alleging that it was inequitably enforced against them because of their race. The Court has previously recognized that the Plaintiffs' living conditions are less than ideal, but that does not permit the Town to enforce their housing

code in a discriminatory manner. Because the Town's enforcement regime inequitably affect Latinos, Plaintiffs have stated a valid claim under the FHAA. See Tsombanidis v. West Haven Fire Dep't., 352 F.3d 565, 573 (2d Cir. 2003).

IV. The Town's Legitimate Nondiscriminatory Reasons

Finally, the Town argues that the Court improperly disregarded its legitimate non-retaliatory reasons for obtaining the ex parte TROs. This argument was previously presented and was fully addressed in the December Order. See December Order at 33-37. The Court finds no overlooked matters or controlling decisions that would change the outcome of the prior decision.

V. Rooker-Feldman And Younger Abstention

Once again, the Town argues that the Rooker-Feldman doctrine precludes this Court from entertaining this matter, or, in the alternative, this Court should decline jurisdiction pursuant to Younger. The Town, however, fails to proffer any substantial reason for this Court to depart from its previous holding.

A. Rooker-Feldman

The Court separated the Juan Valdez Plaintiffs into three groups: (1) those evicted from the residences and named in the caption in the State Court action, (2) those evicted but not named in the State Court action, and (3) those in fear of being evicted but no such action was taken against them. The Court determined that those Plaintiffs who were named in the state court actions

were precluded from bringing suit by Rooker-Feldman. The Court determined, however, that the doctrine did not preclude the remaining Plaintiffs from pursuing the instant action.

With respect to these remaining Plaintiffs, the Town raises a new basis for the application of Rooker-Feldman, namely that Plaintiffs are barred from bringing their claim because they were in privity and united in interest with the defendants in the New York Supreme Court actions.

The Rooker-Feldman doctrine is confined to those cases brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 125 S. Ct. 1517, 1521-22, 161 L. Ed. 2d 454 (2005). Under Rooker-Feldman, those individuals that were nonparties in the state court action may still be bound by the state court litigation under "certain limited circumstances" when the nonparty "has his interests adequately represented by someone with the same interests who is a party." Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 90 (2d Cir. 2005). Examples of these "limited circumstances" include when the first suit was brought by a class representative and the second suit is brought by a class member, or when the second suit is brought by a party who actually controlled the first suit without being a party. See id.

9

Such circumstances are not present here. The rights of the Plaintiffs with respect to each subject premises are distinct. While the remaining Plaintiffs may be in a situation that is factually analogous to those who were named in the prior state court proceedings, that does not require a finding of privity among them. Moreover, there is no indication that the landlords who were named in the state court actions would have any identity of interests with the Plaintiffs in this action. Based upon the conditions prevailing at many of the premises at issue, it would appear that the landlords have little regard for their tenants' interests.

B. Younger Abstention

The Town's arguments in favor of abstention were addressed in the December Order. The Town is referred to the December Order for the reasons supporting the Court's determination.

MOTIONS TO DISMISS

Both the Town and the County have moved to dismiss the Complaint pursuant to Rule 12(b)(6). The Town also moves to dismiss the Complaint pursuant to Rule 12(b)(1), however all grounds raised in support of that portion of the Town's motion are denied for the reasons explained above. The Court will first set forth the appropriate standard of review and then address the respective motions.

I.  Standard Of Review

A district court should grant a motion to dismiss pursuant to Rule 12(b)(6) only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with allegations.'" H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989) (quoting Hishon v. King & Spaulding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)).  In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff and accept these factual allegations as true.  H.J. Inc., 492 U.S. at 249; see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 165, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993) (noting the Federal Rules' liberal system of notice pleading).

The district court's duty "'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000) (quoting Ryder Energy Distribution Co. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)); see also Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The appropriate inquiry, therefore, is not whether a plaintiff's claims are ultimately meritorious, but whether the plaintiff is entitled to offer evidence to support

them.  See Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123-24 (2d Cir. 1991) (plaintiff is not compelled to prove his or her case at the pleading stage).  Additionally, a plaintiff is not required to set out in detail the facts upon which he or she bases a claim.  Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  A plaintiff need only give a statement of his or her claim that will give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests."  Id.  Therefore, where a complaint is filed that charges each element necessary to recover, the dismissal of the case for failure to set out evidential facts can seldom be warranted.  See U.S. v. Employment Plasterers' Ass'n, 347 U.S. 186, 189, 74 S. Ct. 452, 98 L. Ed. 618 (1954).

II.  The Town's Motion

The Complaint alleges three claims against the Town and LaValle: (1) violation of Plaintiffs' procedural due process rights; (2) an equal protection violation; and (3) a violation of the FHAA.  For the reasons set forth in the December Order, Plaintiffs' procedural due process claims are DISMISSED and the Town's motion to dismiss Plaintiffs' FHAA claims is DENIED.  The Town raises four additional arguments in support of its motion to dismiss.  First, the Town argues that the Complaint is fundamentally deficient because Plaintiffs are proceeding under pseudonyms.  Second, the Town maintains that Plaintiffs' equal

12

protection claims are deficient because they fail to allege a group of similarly situated persons who were treated differently. The last two arguments specifically refer to Plaintiffs' § 1983 claims against LaValle in his individual capacity. LaValle maintains that Plaintiffs have not adequately alleged his personal involvement in any constitutional violation. In the alternative, the Town argues that LaValle is entitled to qualified immunity.

A. <u>Plaintiffs' Use Of Pseudonyms</u>

This issue was raised during the course of the preliminary injunction hearing. The Town argued that Plaintiffs should be required to include their real names in the caption of this action. <u>See</u> Fed. R. Civ. P. 10(a), 17. In response Plaintiffs pointed out numerous circumstances where other plaintiffs were permitted to proceed under pseudonyms because of, <u>inter</u> <u>alia</u>, a founded fear of retaliation or risk of harm. At the hearing, the Court permitted Plaintiffs to proceed notwithstanding the Town's objection.

The decision of whether to allow a plaintiff to proceed anonymously rests in the "sound discretion of the court." <u>E.W. v. New York Blood Center</u>, 213 F.R.D. 108, 109-10 (E.D.N.Y. 2003). The decision is informed by several factors, including "(1) whether the plaintiff is challenging governmental activity; (2) whether the plaintiff would be required to disclose information of the utmost intimacy; (3) whether the plaintiff would be compelled to admit his

13

or her intention to engage in illegal conduct, thereby risking criminal prosecution; (4) whether the plaintiff would risk suffering injury if identified; and (5) whether the party defending against a suit brought under a pseudonym would be prejudiced." Doe v. Shakur, 164 F.R.D. 359, 361 (S.D.N.Y. 1996). At least one court in this Circuit has recognized that, where a plaintiff is challenging the actions of a governmental entity, the interest in proceeding "anonymously is particularly strong." Doe v. Smith, 189 F.R.D. 239, 242 (E.D.N.Y. 1998) vacated on different grounds by 105 F. Supp. 2d 40 (1999).

Plaintiffs in this case request leave to proceed anonymously because of their immigration status. They fear that they will be deported if their identities are revealed. Presuming the facts alleged in the Amended Complaint to be true, the fear is more than speculative. Plaintiffs allege that Levy sent Suffolk County Police Department officials to detain and question a Latino laborer who discussed the "no notice, no standards" problem with a New York Newsday reporter. Such facts strongly favor anonymity. On the opposite side, the Court does not find any significant prejudice to Defendants. Defendants cross-examined several Juan Valdez Plaintiffs during the Hearing, and Plaintiffs represent that they will continue to be amenable to any discovery requests. In light of the foregoing, the Court grants Plaintiffs leave to proceed anonymously.

B. <u>Equal Protection Claims</u>

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000). In enforcing its housing code, a "municipality must act consistently with the equal protection clause." <u>English v. Town of Huntington</u>, 448 F.2d 319, 323 (2d Cir. 1971); <u>see also</u> <u>Norwalk CORE v. Norwalk Redevelopment Agency</u>, 395 F.2d 920, 937 (2d Cir. 1968). In order to state an equal protection claim, a plaintiff must allege "1) the person compared with others similarly situated, was selectively treated, and 2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations." <u>FSK Drug Corp. v. Perales</u>, 960 F.2d 6, 10 (2d Cir. 1992).

The Town's challenge to Plaintiffs' equal protection claim is deficient for the same reasons that its challenge to Plaintiffs' FHAA claim fails. Liberally construed, the Amended Complaint alleges that the Town has recently adopted a heightened housing code enforcement plan. Pursuant to the plan, the Town has sought <u>ex</u> <u>parte</u> TRO's ousting the Latino Plaintiffs from their residences. Despite the fact that numerous other Town residents

15

have been cited for various code violations, the Town has only sought to oust Latinos pursuant to <u>ex</u> <u>parte</u> TROs.

    C.   <u>LaValle's Personal Involvement</u>

It is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." <u>McKinnon v. Patterson</u>, 568 F.2d 930, 934 (2d Cir. 1977); <u>see also</u> <u>Sealey v. Giltner</u>, 116 F.3d 47, 51 (2d Cir. 1987). A § 1983 complaint that does not allege the personal involvement of the defendant is "fatally defective on its face." <u>Alfaro Motors</u>, 814 F.2d at 886 (internal quotations and citations omitted). The only allegation in the Amended Complaint that specifically addresses LaValle is found in Paragraph 10: "John Jay LaValle is the Town Supervisor of the Town of Brookhaven." (Am. Compl. ¶ 10.) While the Amended Complaint makes repeated reference to "Town Officials," it contains no specific references to any actions taken by LaValle or, at a minimum, LaValle's knowledge of the challenged conduct. The pleading is plainly insufficient to allege any claim, individually, against LaValle. Accordingly, Plaintiff's § 1983 claim against LaValle in his individual capacity is hereby DISMISSED. This determination renders unnecessary any qualified immunity analysis. <u>See Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) (stating that the threshold question, before passing on qualified immunity, is whether plaintiff has alleged any

constitutional violation).

III. The County's Motion

The County and Levy argue that the Amended Complaint fails to sufficiently allege their involvement in the challenged conduct. In addition, to the extent Plaintiffs claim that the County failed to provide them with sufficient post-eviction housing, the County maintains it was under no obligation to do so. Finally, Levy challenges the sufficiency of the allegations against him, and also claims entitlement to qualified immunity.

The gravamen of the Amended Complaint plainly challenges conduct undertaken by the Town. (See Am. Compl. ¶¶ 28-34 (detailing the origin and contours of the challenged policy).) The specific references to the County are as follows:

> Town officials have begun visiting these houses, sometimes in the presence of Suffolk County police, to create a list of alleged violations of relevant housing and safety codes. (Id. ¶ 35.)
>
> No Town or County official has provided notice - written or verbal - to any of the tenants of these houses that they might be evicted for these violations. (Id. ¶ 36.)
>
> Town officials, with the assistance of Suffolk County Police, have so far evicted tenants from eleven houses, all Latinos, leaving hundreds of them homeless (Id. ¶ 38.)
>
> Unlike the nearby Town of Riverhead of Nassau County,[3] neither the Town of Brookhaven nor Suffolk County has given the tenants sufficient notice and relocation assistance to allow these displaced tenants find new homes. (Id. ¶ 48.)

---

[3] Riverhead is located in Suffolk County, not Nassau County.

> Suffolk County through the statements and actions of its County Executive has endorsed, condoned and participated in the development of this eviction policy. (Id. ¶ 54.) In reference to the housing code crackdown, Steve Levy, the County Executive has repeatedly made public comments that the County's "plan" is to continue enforcing the law. (Id. ¶ 55.)
>
> In fact, Mr. Levy has been the most visible and ardent spokesperson for the evictions policy. (Id. ¶ 56.)
>
> On or about the first week in August 2005, Defendant Steve Levy asked the Suffolk County Police Department to detain and question[] a Latino laborer[] who had been featured in the newspaper New York Newsday discussing the homelessness problem created by the "no notice, no standards" evictions. (Id. ¶ 57.)
>
> Per Mr. Levy's request, the Suffolk County Police Department did locate detain, question and videotape the laborer about his account to the newspaper. (Id. ¶ 58.)

The only remaining claims in this action rest upon the Town's discriminatory enforcement of its housing code. The Amended Complaint contains no allegation that the County had any role in making the decision to pursue a particular course of enforcement with respect to any residence. While the Amended Complaint alleges that County police officers were present during the Town's investigation of the premises and assisted with the evictions, such actions, standing alone are insufficient to state a claim against the County. See Corbin v. Stevens, No. 91-CV-1054, 1992 WL 96684, at *2 (S.D.N.Y. Apr. 30, 1992) ("To satisfy the state action requirements plaintiff would, at a minimum, have to prove that the police were knowingly involved in a plan to deprive plaintiff of his rights.") Plaintiffs allege that Levy has been outspoken about

the Town's plan, but the only allegations concerning his role in its development are conclusory. There is no allegation that Levy was aware of the policy's disparate impact on Latinos, or that Levy otherwise condoned the allegedly race-based enforcement of the Town's housing codes. Absent any allegation of the County's or Levy's involvement in the Town's alleged discriminatory actions, Plaintiff's § 1983 and FHAA claims must be DISMISSED.[4]

## CONCLUSION

Defendants' request for reconsideration of the December 2005 Order is DENIED. The Town and LaValle's motion to dismiss is GRANTED in part and DENIED in part. Plaintiffs' § 1983 claims against LaValle in his individual capacity are DISMISSED with leave to re-plead. The County and Levy's motion to dismiss is GRANTED. Plaintiffs' claims against the County and Levy are DISMISSED with leave to re-plead. Any amended pleading must be filed within thirty (30) days of the date of this Order.

SO ORDERED

Dated: September  25 , 2006
       Central Islip, New York          /s/ JOANNA SEYBERT
                                        Joanna Seybert, U.S.D.J.

---

[4] The Amended Complaint alleges three causes of action, none of which challenge the County's inequitable provision of post-eviction assistance. Accordingly, the Court need not reach the County's argument concerning its obligation to provide post-convciction housing assistance to individuals who are not qualified aliens. (See County Mem. of Law at 5-8.)